IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| VICTOR M. BOOTH,<br>    individually and as next friend of<br>    L.B. a minor child; | ) ) ) ) |
| SHAMEKA WILLIAMS,<br>    individually and as next friend of<br>    K.G. and R.T., minor children; | ) ) ) ) |
| SHANITA WILLIAMS,<br>    individually and as next friend of<br>    N.W. and M.R., minor children; and | ) ) ) ) |
| JANE HELLEWELL,<br>    individually and as next friend of<br>    H.B., a minor child,<br>                                    *Plaintiffs*, | ) ) ) ) ) |
| *vs*. | ) ) |
| MURIEL BOWSER,<br>    in her official capacity as Mayor of the<br>    District of Columbia; | ) ) ) ) |
| LAQUANDRA NESBITT,<br>    In her official capacity as<br>    Director of the District of Columbia<br>    Department of Health; and | ) ) ) ) ) |
| LEWIS FEREBEE,<br>    In his official capacity as<br>    Chancellor of the District of Columbia<br>    Public Schools,<br>                                    *Defendants*. | ) ) ) ) ) ) |

**Case No. 21-1857**

**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

_____

## I.    PRELIMINARY STATEMENT

Plaintiffs VICTOR M. BOOTH, SHAMEKA WILLIAMS, SHANITA WILLIAMS, and

JANE HELLEWELL, individually and as next friends of their respective minor children, seek a

- 1 -

declaration under 42 U.S.C. § 1983 and 28 U.S.C. § 2201 that the District of Columbia Minor Consent for Vaccinations Amendment Act of 2020 (hereinafter "the Minor Consent Act") conflicts with 42 U.S.C. §§ 300aa, *et. seq.*, the National Childhood Vaccine Injury Act of 1986 (hereinafter "the National Vaccine Act") in violation of the Constitution's Supremacy Clause; deprives the plaintiffs of their right to freely exercise their religion, in violation of the Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C. § 2000bb; and deprives the plaintiffs of their constitutional right as parents to direct the care and upbringing of their children, in violation of the Due Process Clause of the Fifth Amendment,. Plaintiffs also seek an injunction against the defendants to prevent them from enforcing the Minor Consent Act. Finally, the plaintiffs seek costs and attorneys' fees pursuant to 42 U.S.C. § 1988, and any other and further relief that the Court deems proper.

In support of the causes of action presented herein, Plaintiffs state as follows:

## PARTIES

1.     Plaintiff Victor M. Booth is a citizen of the United States of America, who resides in the District of Columbia. Victor is the biological father of L.B., who resides with Victor in the District of Columbia, is 12 years old, and is enrolled in Kipp Will Academy, a public charter school in the District.

2.     Plaintiff Shameka Williams is a citizen of the United States of America, who resides in the District of Columbia. Shameka is the biological mother of K.G. and R.T., who reside with Shameka in the District of Columbia. K.G. is 13 years old, and is enrolled in Rose L. Hardy Middle School, a public school in the District. R.T. is 4 years old, and will be of compulsory attendance age at the start of the 2022-2023 school year.

3.       Plaintiff Shanita Williams is a citizen of the United States of America, who resides in the District of Columbia. Shanita is the biological mother of N.W. and M.R., who reside with Shanita in the District of Columbia. N.W. is 15 years old, and is enrolled in KIPP-DC, a public charter school in the District. M.R. is 9 years old, and is enrolled in Watkins Elementary School, a DCPS school in the District.

4.       Plaintiff Jane Hellewell is a citizen of the United States of America, who resides in the District of Columbia. Jane is the biological mother of H.B., who resides with Jane in the District of Columbia. H.B. is 15 years old, and is enrolled in School Without Walls High School, a public magnet high school in the District.

5.       Defendant Muriel Bowser is the Mayor of the District of Columbia. As the head of the District's Executive Branch, Mayor Bowser oversees the District of Columbia's Department of Health (hereinafter "D.C. Health") and appoints D.C. Health's Director. Mayor Bowser is also authorized by law to govern the public schools of the District of Columbia, and to appoint the Chancellor of Schools for the District of Columbia Public Schools (hereinafter "DCPS"). Mayor Bowser is sued in her official capacity only.

6.       Defendant LaQuandra Nesbitt the Director of D.C. Health. Director Nesbitt was appointed by Mayor Bowser in 2015. As the chief executive officer of D.C. Health, Director Nesbitt directs D.C. Health and its policies under the supervision of Mayor Bowser. D.C. Health, which has a principal address of 899 North Capitol Street, NE, Washington, D.C. 20002, is an executive agency of the District. Director Nesbitt is authorized pursuant to state law, G.L. c. 18B, § 7, to adopt rules and regulations for the Department necessary to carry out its obligations and duties under G.L. c. 18B and c. 119. Director Nesbitt is sued in her official capacity only.

7.      Defendant Lewis Ferebee is the Chancellor of DCPS. Chancellor Ferebee was appointed by Mayor Bowser in 2018. As the chief executive officer of DCPS, Chancellor Ferebee directs DCPS and its policies under the supervision of Mayor Bowser, and also has the authority to promulgate rules for DCPS. Chancellor Ferebee is sued in his official capacity only.

## JURISDICTION AND VENUE

8.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and 28 U.S.C. §§ 2201, *et. seq.* The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

9.      Venue is proper pursuant to 28 U.S.C. § 1391, in that at all times pertinent to this action all the defendants were residents of the District of Columbia; defendant Muriel Bowser is mayor of the District, and in that capacity oversees the District's Department of Health and public schools; the Plaintiffs reside in the District; and a substantial part of the events or omissions giving rise to the claims presented herein occurred in the District.

## ALLEGATIONS OF FACT

### *Vaccinations in the District of Columbia*

10.      In the District of Columbia, every parent or guardian who resides permanently or temporarily in the District during a school year, and who has custody or control of a child between the ages of five and eighteen, must place the child in regular attendance at an educational institution during the period of the school year when the public schools of the district are in session. D.C. CODE § 38-202(a).

11.      District law states that no student in kindergarten through twelfth grade shall be admitted to any public, private, or parochial school in the district unless they comply with immunization standards and regulations specified by the Mayor, or their parents have

documented either a religious or medical exemption from vaccinations. D.C. CODE §§ 38-501, 38-502, and 38-503.

12.     The Mayor is charged under District law to specify the standards of compliance and may revise by regulation the list of immunizations for students. D.C. CODE § 38-503.

13.     Section 38-506 of the D.C. Code, which recognizes the right of a parent to assert a religious or medical exemption on behalf of a child, was enacted in 1979.

14.     To obtain a religious exemption for a student under the age of 18, the student's parent or guardian must object in good faith and in writing, to the chief official of the school, that vaccinations would violate the parent's religious beliefs. A good faith statement that a parent has sincere religious beliefs against childhood immunizations is sufficient to claim the exemption. D.C. CODE § 38-506(1).

15.     To obtain a medical exemption for a student under the age of 18, the student's parent or guardian must provide the school with a written certification by a private physician, his or her representative, or the public health authorities that vaccinations are medically inadvisable. D.C. CODE § 38-506(2).

16.     The minor's parent—not the minor—is vested with the lawful authority to assert an exemption from vaccinations under D.C. CODE § 38-506.

17.     On April 8, 2021, Mayor Bowser announced that all DCPS Schools will fully reopen for in-person learning, five days a week, for every student on August 30, 2021.

18.     On or about April 19, 2021, Mayor Bowser stated that for the Fall of 2021, in-person attendance would be required for all students.

19.     On information and belief, students in the District will be required to attend DCPS schools in person, starting August 30, 2021, unless the student has a medical exemption from a

physician, and the student is able to obtain a seat in a "virtual by need" program offered by the District.

### Plaintiff Victor M. Booth

20.     Plaintiff Victor M. Booth resides with his minor child, L.B., in the District of Columbia.

21.     L.B. is twelve years old and is enrolled in Kipp Will Academy, a public charter school located in the District.

22.     For the 2020-2021 school year, L.B. has participated in remote instruction through Kipp Will Academy, not in-person instruction.

23.     Prior to May 10, 2021, Victor planned to have L.B. attend Kipp Will Academy in-person when the 2021-2022 school year began on August 30, 2021.

24.     Although L.B. received childhood vaccines when he was a baby, in the intervening years Victor has formed sincere religious objections to vaccinations.

25.     Victor objects to L.B. receiving both the COVID-19 vaccine and childhood vaccines, and will not provide parental consent to administer those vaccines to L.B.

### Plaintiff Shameka Williams

26.     Plaintiff Shameka Williams resides with her minor children, K.G. and R.T., in the District of Columbia.

27.     K.G. is 13 years old, and is enrolled in Rose L. Hardy Middle School, a public school in the District.

28.     R.T. is 4 years old, and will be of compulsory attendance age at the start of the 2022-2023 school year. Prior to the adoption of the Minor Consent Act, Shameka planned to enroll R.T. in a public school in the District when R.T. reached compulsory attendance age.

29.    For the 2020-2021 school year, K.G. has participated in remote instruction through Hardy Middle School, not in-person instruction.

30.    Prior to May 10, 2021, Shameka planned to have K.G. attend Hardy Middle School in-person when the 2021-2022 school year began on August 30, 2021.

31.    Although K.G. received childhood vaccines when she was a baby, in the intervening years Shameka has formed sincere religious objections to vaccinations.

32.    Shameka objects to K.G. receiving both the COVID-19 vaccine and childhood vaccines, and will not provide parental consent to administer those vaccines to K.G.

### *Plaintiff Shanita Williams*

33.    Plaintiff Shanita Williams resides with her minor children, N.W. and M.R., in the District of Columbia.

34.    N.W. is 14 years old, and is enrolled in KIPP DC, a public charter school in the District.

35.    M.R. is 9 years old, and is enrolled in Watkins Elementary School, a public charter school in the District.

36.    For the 2020-2021 school year, N.W. and M.R. have received remote instruction, not in-person instruction, from their respective schools.

37.    Prior to May 10, 2021, Shanita planned to have N.W. and M.R. return to their schools for in-person instruction when the 2021-2022 school year began on August 30, 2021.

38.    Although N.W. and M.R. received childhood vaccines when they were babies, in the intervening years Shanita has formed sincere religious objections to vaccinations.

39.     Shanita objects to N.W. and M.R. receiving both the COVID-19 vaccine and childhood vaccines, and will not provide parental consent to administer those vaccines to N.W. or M.R.

### Plaintiff Jane Hellewell

40.     Plaintiff Jane Hellewell resides with her minor child, H.B., in the District of Columbia.

41.     H.B. is 15 years old, and is enrolled in School Without Walls High School, a public magnet high school in the District.

42.     For the 2020-2021 school year, H.B. participated in remote instruction through School Without Walls for the first and second quarters. During the third quarter, H.B. went to School Without Walls, where he participated in remote instruction while sitting in a classroom with several other students and a proctor. H.B. returned to remote instruction for the fourth quarter.

43.     Prior to May 10, 2021, Jane planned to have H.B. attend School Without Walls in-person when the 2021-2022 school year began on August 30, 2021.

44.     Because Jane objects to immunizations based on her sincerely held religious beliefs, H.B. has not received any childhood vaccinations.

45.     Jane objects to H.B. receiving the COVID-19 vaccine and other childhood vaccines, and will not provide parental consent to administer those vaccines to H.B.

### The District of Columbia
### Minor Consent to Vaccinations Act of 2020

46.     On October 20, 2020, the Council of the District of Columbia approved the District of Columbia Minor Consent to Vaccinations Act of 2020 (hereinafter "the Minor Consent Act").

47.     The Minor Consent Act amends Title 22-B of the District of Columbia Municipal Regulations to allow a minor who is eleven years of age or older to consent to receive a vaccine where the minor is capable of meeting the informed consent standard.

48.     The Minor Consent Act amends Title 22-B of the District of Columbia Municipal Regulations to allow a minor who is eleven years of age or older to consent to receive a vaccine if it is recommended by the United States Advisory Committee on Immunization Practices (ACIP), and the vaccine is administered in accordance with ACIP's recommended immunization schedule. 22-B D.C.M.R. § 600.9(a).

49.     For purposes of the Minor Consent Act, a "minor" is any person under the age of eighteen. 22-B D.C.M.R. § 699.1; D.C. CODE § 46-101.

50.     The Minor Consent Act subverts the right and duty of parents to make informed decisions about whether their children should receive vaccinations, by both depriving them of the opportunity to make those decisions and by concealing from parents that their children have been asked to consent to vaccinations or may have indeed been vaccinated.

51.     In fact, the Minor Consent Act states that medical providers who administer vaccines under the Minor Consent Act shall seek reimbursement directly from the insurer without parental knowledge or consent. 22-B D.C.M.R. § 600.9(d)(1). The Minor Consent Act further provides that insurers shall not send an Explanation of Benefits (EOB) for services provided under the Minor Consent Act. While minors who receive vaccines under the Minor Consent Act shall have access to their immunization records, their parents will not have any access at all. 22-B D.C.M.R. § 600.9(d)(2)-(3).

52.     The Minor Consent Act also amends Section (a) of the Student Health Care Act of 1985, codified in D.C. Code § 38-602.

53.     Prior to the Minor Consent Act, Section 38-602(a) required students attending prekindergarten through 12th grade to furnish their school with an annual certificate of health completed and signed by a physician, unless the student's parent had submitted a religious exemption under the following section, 38-603.

54.     The Minor Consent Act left that prior language unchanged, but added a second provision, now codified in D.C. Code § 38-602(a)(2). That provision states that if a vaccine under the Minor Consent Act is administered to a student whose parents have filed either a religious exemption or an exemption from the Human Papillomavirus virus (HPV) vaccine, "the healthcare provider shall leave blank Part 3 of the immunization record, and submit the immunization record directly to the minor student's school."

55.     Part 3 of the District of Columbia's Child Health Certificate is where medical providers record the administration of nine specific vaccines (most of which are combination vaccines): Diptheria-Tetanus-Pertussis (under 7 years old), Diptheria-Tetanus, Hemophilius Influenzae B (HIB), Hepatitis B (HBV), Polio, Measles-Mumps-Rubella (MMR), Varicella, Pneumococcal conjugate (PCV), and Influenza (which is not required). Part 3 also contains a blank row for recording "other" vaccines.

56.     This provision of the Minor Consent Act mandates the creation of two health records for students whose parents have claimed a religious exemption. One record, accessible to the parents, leaves the child's immunization record blank, even though vaccinations have been administered to the child. The second record, which is kept from parents, records the child's actual medical history, including administered vaccinations.

57.     Furthermore, Section 38-602(a)(2) states that the school "shall keep the immunization record received from the health care provider confidential," except that it may be

shared with "the Department of Health or the school-based health center." This record cannot be shared with parents.

58.     The Minor Consent Act did not amend D.C. CODE § 38-506 to abolish the authority of parents to assert a religious exemption from vaccinations, nor did it amend D.C. CODE § 38-603 to eliminate the religious exemption.

59.     On its face, the Minor Consent Act circumvents parents' decisions to claim a religious exemption pursuant to D.C. CODE § 38-506(1).

60.     On information and belief, the purpose of the Minor Consent Act is to be able to administer vaccines for the Human Papillomavirus virus (HPV), meningitis, COVID-19, and other vaccinations recommended by the ACIP, to children whose parents have claimed a religious exemption pursuant to D.C. CODE § 38-506(1), without the knowledge or consent of the parents.

### The D.C. Council Enacts the Minor Consent Act

61.     On October 7, 2020, the D.C. Council's Committee on Health met to consider the Minor Consent Act. The meeting was recorded and published on the Counsel's website, in accordance with the District of Columbia Open Meetings Act, D.C. Code § 2-578. As of the date of this filing, the recording for the Committee on Health's meeting may be accessed by visiting http://dc.granicus.com/MediaPlayer.php?view_id=2&clip_id=5720.

62.     At this meeting, Counsel Member Mary Cheh, the sponsor of the Minor Consent Act, stated before the Council of the District of Columbia Committee on Health that, "unfortunately, we see a rising number of individuals or families across the globe, really, who are choosing not to vaccinate their children based on the widely disproven belief that vaccines may cause autism or other harmful health effects. These anti-science beliefs not only put the

unvaccinated children at risk, but have led to the spread of diseases that have been all but eradicated in the past."

63.     Council Member Cheh further stated that, "[g]iven our current, ongoing pandemic, and the incredible work being done to develop a COVID-19 vaccine, it's more important than ever, I think, that we reduce any and all barriers to these treatments, and this legislation aims to do just that, by increasing access to vaccines to minors who choose to get vaccinated, but have been unable to do so."

64.     Within minutes of Council Member Cheh's comments, the Committee on Health unanimously approved the Minor Consent Act.

65.     On October 20, 2020, the District of Columbia Council met as a Committee of the Whole to consider the Minor Consent Act. The meeting was recorded and published on the Counsel's website. As of the date of this filing, the recording for this legislative meeting may be accessed by visiting http://dc.granicus.com/MediaPlayer.php?view_id=2&clip_id=5765.

66.     At that meeting, Chairman Phil Mendelson stated, "public health can very much be in the public interest, and that is, have a compelling state interest, and we see that today with the pandemic, and the need, because of public health, to alter certain behaviors."

67.      On October 20, 2020, Council Member Charles Allen stated, "what we're talking about is making sure that we take the steps necessary and we have the rules and laws set up in a way that we are using vaccines in a way that keeps not only individuals safe but keep families, neighborhoods, and communities safe."

68.     On October 20, 2020, Council Member Allen stated, "I know in previous pieces of legislation that have related to young people, we've worked on things such as not having it show up on a family insurance policy for example, to try to help protect that young person. So

there's steps that we can take in a way that address, as I heard Mr. McDuffy talking about, how would we make sure we're protecting, if that young person, perhaps, is taking a step that their parents or guardians don't exercise, but they think is in their own best health, so they're trying to take that step."

69.     On October 20, 2020, Council Member Allen stated, "using vaccines are a way that we not only keep individuals safe but we keep communities safe, and we're certainly going to be having a conversation sometime next year when there's another vaccine that's going to be critically important, that's gonna see widespread distribution and we're gonna want to make sure that we're taking the right steps."

70.     On October 20, 2020, Council Member Trayon White stated, "for me, it's not an issue of the vaccinations. It's an issue of the Council voting to circumvent the inclusion of a parent making the decision about their child. And the floor is an eleven year old child. I have a twelve-year old son who can barely put together a five-page paper, or finish his homework on time, or be up late at night playing Fortnite—making decisions about his health. And so for us to circumvent that process is very worrisome for me, and that's why I stand as relates to this legislation, as we attempt to use the law to remove parental involvement as relates to important decisions made by a minor as young as eleven years old."

71.     On October 20, 2020, the Minor Consent Act passed First Reading by a vote of 12 in favor, 1 opposed.

72.     On November 17, 2020, the District of Columbia Council considered the Minor Consent Act in a legislative meeting. The meeting was recorded and published on the Counsel's website. As of the date of this filing, the recording for this legislative meeting may be accessed by visiting http://dc.granicus.com/MediaPlayer.php?view_id=2&clip_id=5903.

73.     At that meeting, Council Member Vincent Gray stated, "from an abundance of caution, we selected age eleven because that is on the late-end of when children should receive the first Gardasil vaccination to prevent HPV and cervical cancer. Additionally, the first of two meningitis vaccinations is recommended at age eleven, with the goal of receiving a second booster before college, when the risk of meningitis is highest."

74.     On November 17, 2020, Council Member Gray stated, "this amendment, which I'm moving now, requires the provider to notify the insurer that the immunization has been provided under the authority of the Minority Consent for Vaccinations Amendment Act of 2020, so the insurer will know that they should not send an explanation of benefits for the vaccination to the minor's house. . . . Without this amendment, the insurer would not be on notice that they needed to refrain from sending the explanation of benefits."

75.     The Amendment was adopted by the Council.

76.     On information and belief, the purpose of the Minor Consent Act is to circumvent and subvert the decision of parents who have claimed a religious exemption pursuant to D.C. CODE § 38-506(1).

77.     On information and belief, the purpose of the Minor Consent Act is to vaccinate children whose parents have claimed a religious exemption, without those parents' knowledge or consent.

78.     On information and belief, the purpose of the Minor Consent Act is to conceal from parents the fact that one or more vaccines have been administered to the minor without their knowledge or consent.

79.     On information and belief, the purpose of the Minor Consent Act is to allow D.C. Health and DCPS to administer vaccines to minors whose parents have claimed a religious

exemption, including the Gardasil vaccine for HPV, vaccines for meningitis, and vaccines for COVID-19.

80.     On November 17, 2020, after adopting the amendment, the Council adopted the Minor Consent Act by a vote of 10 in favor, 3 opposed. The Minor Consent Act was transmitted to Mayor Bowser.

81.     On December 23, 2020, the Minor Consent Act was enacted without the Mayor's signature, and was transmitted to the Speaker of the United States House of Representatives and the President of the United States Senate for a period of congressional review, as required by the District of Columbia Home Rule Act, D.C. Code § 1-206.02(c)

82.     On March 19, 2021, the District of Columbia Minor Consent for Vaccinations Amendment Act of 2020 was enacted into law.

### The District of Columbia Adopts Mandatory In-Person Schooling For the 2021-2022 School Year, beginning August 30, 2021

83.     On April 8, 2021, Mayor Bowser announced that starting August 30, 2021, all DCPS schools will fully reopen for in-person learning, five days a week, for every student.

84.     On May 10, 2021, the U.S. Food and Drug Administration (FDA) expanded the emergency use authorization (EUA) for the Pfizer-BioNTech COVID-19 Vaccine to include children ages 12 through 15.

85.     On May 12, 2021, the Center for Disease Control and Prevention (CDC) adopted the recommendation of its Advisory Committee on Immunization Practices (ACIP) that the Pfizer-BioNTech COVID-19 vaccine could be administered to children between the ages of 12 and 15.

86.     On May 12, 2021, at a Telephone Townhall, DCPS Assistant Superintendent of Health and Wellness Dr. Heidi Schumacher stated, "The COVID-19 vaccine is not the only

vaccine that is critical for our young people. As a reminder, there are lots of routine pediatric vaccinations that are critical to protect the health and wellbeing of our young people, and our broader community. Immunizations are indeed required for in-person attendance—these are the routine pediatric immunizations—and ensuring your child receives all age-appropriate vaccinations is one of the most important things that we can do as a community to protect our children and to protect one another. Students without documentation of the full complement of required vaccines will not be admitted to school, and we encourage families to take action now."

87.     At the Telephone Townhall, Chancellor Ferebee stated, "We're excited that many of our residents have ramped up their participation in the vaccination process, and we anticipate D.C. Public School facilities [will] be a place in which parents, guardians, children, everyone in the family can be vaccinated. We are not planning at this point in time requiring [sic] vaccinations for school participation. However, as Dr. Schumacher highlighted earlier, it's critical that families ensure that there is a clear immunization record for all of our students to participate in learning next school year."

88.     Chancellor Ferebee closed the Telephone Townhall by stating, "If you want to see our students back in school, if you believe this is important, one of the most important things that we can do together, collectively as a community, is to get as many people vaccinated as possible. And as you heard tonight, we have a tremendous opportunity in the coming days and weeks to have our twelve to fifteen year olds vaccinated."

89.     On May 14, 2021, Chancellor Ferebee sent an e-mail to DCPS parents, stating that "While the COVID-19 vaccine is currently not required for students to attend school next year, we encourage all students age 12 and older and their parents and caregivers to get vaccinated. **If you want to see students back in school, then it is our responsibility as a**

**community for everyone to receive the COVID-19 vaccine when it's available to them.** We are collaborating with local health officials to host vaccination clinics at our schools. More details are forthcoming" (emphasis in original).

90.     Because DCPS is not yet requiring students to receive the COVID-19 vaccine before they can attend school in August 2021, parents are not legally required to file a religious exemption if they object to their children receiving that vaccine.

91.     Although DCPS is not yet requiring students to receive the COVID-19 vaccine before they can attend school in August 2021, DCPS may administer that vaccine to children under the Minor Consent Act because it has been recommended by the U.S. Advisory Committee on Immunization Practices (ACIP).

92.     In May 2021, the District's Office of the State Superintendent of Education released an updated Immunization Attendance Policy for DCPS schools for the 2021-2022 school year. As of the date of this filing, DCPS's Immunization Attendance Policy may be accessed by visiting https://osse.dc.gov/sites/default/files/dc/sites/osse/page_content/ attachments/FINAL_Immunization%20Attendance%20Policy%202021-22_05.25.21.pdf.

93.     The Immunization Attendance Policy encourages schools to establish a School Health Team before the school year starts to review immunization certificate compliance periodically throughout the school year, to "identify students that are non-compliant, and to disseminate info to school families about "the critical public health need for immunizations, the consequences for immunization non-compliance (e.g., removed from school after 20-school day period), pediatric immunization schedule requirements by age, appropriate immunization forms (e.g., Universal Health Certificate), and information on where pediatric immunizations are administered in the District."

94. While Immunization Attendance Policy advises schools that "DC law permits medical or religious exemption from immunization if the parent, guardian, or adult student submits written documentation to the school explaining the exemption," it goes on to state that "[r]eligious exemptions are generally rare in the District and parents, guardians, or adult students must go through D.C. Health to sign the certificate to confirm they understand the health risks of not obtaining the necessary immunizations."

95. Three paragraphs later, the Immunization Attendance Policy also advises schools of the Minor Consent Act, stating that the Act "allows minors, 11 years of age or older, to receive a vaccine without parental consent if the minor is capable of meeting the informed consent standard, the vaccine is recommended by the U.S. Advisory Committee on Immunization Practices (ACIP), and will be provided in accordance with CIP's recommended immunization schedule."

96. The Immunization Attendance Policy goes on to state, "If a minor student is utilizing a religious exemption or HPV opt-out and the student receives a vaccine under this law, the healthcare provider shall submit the immunization record directly to the minor student's school," and "the school shall keep the immunization record received from the healthcare provider confidential, except that the school may share the record with D.C. Health or the school-based health center (if applicable)," citing D.C. Code § 38-602(a)(2).

97. Appendix F of the Immunization Attendance Policy includes a list of "Frequently Asked Questions." One of these asks, "Is the COVID-19 Vaccine required for students to attend school in the District of Columbia?" The answer states, "As of the date of this document, there is no COVID-19 vaccination available for children younger than age 12. As such, neither D.C.

Health nor the CDC opines at this time on whether the vaccine will or should be required for students." Appendix F does not include any FAQs about the Minor Consent Act.

98.     On or around June 1, 2021, Chancellor Ferebee stated, "the science is clear: Vaccines are the single most effective tool we have to stop the spread of the coronavirus. To help meet our commitment to fully reopen schools for every student, every day in the fall, it is our responsibility as a community to get vaccinated, including our middle school and high school students."

99.     On June 1, 2021, DCPS opened walk-in vaccination clinics in four DCPS schools, offering the COVID-19 vaccine to anyone age 12 or above.

100.     On information and belief, the Mayor, D.C. Health, and DCPS are developing policies and procedures under the Minor Consent Act to administer vaccines for HPV, meningitis, and COVID-19 to additional students at more schools, including students whose parents have claimed a religious exemption.

101.     On information and belief, upon the resumption of full, in-person learning, the Mayor, D.C. Health, and DCPS will authorize the vaccination of students whose parents have claimed a religious exemption.

102.     Because of the Minor Consent Act, and because of public comments by Council members that the District's intent is to offer vaccinations to children of parents who hold "anti-science beliefs," Victor fears that he cannot send L.B. back to Kipp Will Academy on August 30, 2021 without jeopardizing his lawful decision to object to vaccinations based on his sincere religious beliefs.

103.     Because of the Minor Consent Act, and because of public comments by Council members that the District's intent is to offer vaccinations to children of parents who hold "anti-

science beliefs," Shameka fears that she cannot send K.G. back to Hardy Middle School on August 30, 2021 without jeopardizing her lawful decision to object to vaccinations based on her sincere religious beliefs. Shameka has been already contacted by her local school about getting K.G.'s vaccinations "up to date" before the start of the school year, and both she and K.G. have faced intense peer pressure to receive the COVID-19 vaccine. When K.G. returns to school, Shameka fears that K.G. will be pressured or bribed to "consent" to being vaccinated.

104.    Because of the Minor Consent Act, and because of public comments by Council members that the District's intent is to offer vaccinations to children of parents who hold "anti-science beliefs," Shanita fears that she cannot send M.R. or N.W. back to school on August 30, 2021 without jeopardizing her lawful decision to object to vaccinations based on her sincere religious beliefs. Shanita has already been told by her local school that M.R. and N.W. cannot return to school without getting "up to date" on their vaccinations, and has faced intense pressure to receive the COVID-19 vaccine. When M.R. and N.W. return to school, Shameka fears that they will be pressured to "consent" to being vaccinated.

105.    Because of the Minor Consent Act, and because of public comments by Council members that the District's intent is to offer vaccinations to children of parents who hold "anti-science beliefs," Jane fears that she cannot send H.B. back to school on August 30, 2021 without jeopardizing her lawful decision to object to vaccinations based on her sincere religious beliefs. Jane has received numerous communications from H.B.'s school about required immunizations, and H.B. has told Jane that he is facing intense pressure to receive the COVID-19 vaccine. When H.B. returns to school, Jane fears that he will be pressured to "consent" to being vaccinated.

### *The National Childhood Vaccine Injury Act of 1986*

106.     In 1986, Congress enacted the National Childhood Vaccine Injury Act, which is codified in 42 U.S.C. § 300aa, *et seq.*

107.     The National Vaccine Act expresses a clear intent by the Congress of the United States to occupy the field of law as to the administration of childhood vaccinations.

108.     The National Vaccine Act was enacted in response to a growing number of lawsuits alleging neurological damage due to a vaccine injury.

109.     The National Vaccine Act created a no-fault compensation program to stabilize a vaccine market adversely affected by an increase in vaccine-related tort litigation, and to facilitate compensation to claimants who found pursuing legitimate vaccine-inflicted injuries too costly or difficult. *Bruesewitz v. Wyeth LLC*, 562 U.S. 223 (2011).

110.     As the Supreme Court explained in *Bruesewitz*, the National Vaccine Act is based upon the premise that vaccine injury is "unavoidable." If a large enough number of children are vaccinated, eventually some children will be seriously injured. Recognized vaccine injuries include severe neurological damage and death. Congress created the National Vaccine Injury Compensation Program (VICP) to address these issues, as well as complaints that obtaining compensation for legitimate vaccine-inflicted injuries was too costly and difficult.

111.     Under the National Vaccine Act, "[a]s a *quid pro quo*, manufacturers enjoy significant tort-liability protections. Most importantly, the Act eliminates manufacturer liability for a vaccine's unavoidable, adverse effects." *Bruesewitz*, 562 U.S. at 229.

112.     Congress's comprehensive regulatory scheme of fast, informal adjudication is made possible by the Act's Vaccine Injury Table, which lists the vaccines covered under the Act;

describes each vaccine's compensable, adverse side effects; and indicates how soon after vaccination those side effects should first manifest themselves. *See* **Complaint Exhibit C**.

113.    If the vaccine injury first manifests during the short time period listed on the table (referred to as a "table injury"), then the vaccine is presumed to have caused the injury and the child is entitled to compensation, unless the Department of Health and Human Services can prove an alternative cause of injury. If the child's injury is not listed on the Vaccine Injury Table, or if the injury is listed on the table, but the injury does not manifest until after the short time period listed on the table, then the petitioner bears the burden of proving causation. This is referred to as a "non-table injury."

114.    Congress's regulatory scheme is dependent on recognizing vaccine injuries in a timely manner: not only is timely recognition important for receiving follow-up medical care, but it is also an element of proving that one is entitled to legal compensation for injuries—compensation that may be necessary for a lifetime of care.

115.    As part of this comprehensive regulatory scheme, Congress has mandated that "[e]ach health care provider who administers a vaccine set forth in the Vaccine Injury Table to any person shall record, or ensure that there is recorded, in such person's permanent medical record or in a permanent office log or file to which a legal representative shall have access upon request) with respect to each such vaccine—(1) the date of administration of the vaccine, (2) the vaccine manufacturer and lot number of the vaccine, (3) the name and address and, if appropriate, the title of the health care provider administering the vaccine, and (4) any other identifying information on the vaccine required pursuant to regulations promulgated by the secretary." 42 U.S.C. § 300aa-25(a).

116.    As part of this comprehensive regulatory scheme, Congress has defined "legal representative" as "a parent or an individual who qualifies as a legal guardian under State law." 42 U.S.C. § 300aa-33(2).

117.    The vaccines set forth in the Vaccine Injury Table are the same vaccines recommended by the United States Advisory Committee on Immunization Practices (ACIP), which can be administered by health providers under the Minor Consent Act. ACIP's *Recommended Child and Adolescent Immunization Schedule* is reproduced in **Exhibit E**.

118.    The Minor Consent Act subverts this mandate by commanding that health providers shall not record the administration of numerous vaccines in Part 3 of the child's Health Certificate, including Diptheria-Tetanus-Pertussis, Diptheria-Tetanus, Hemophilius Influenzae B (HIB), Hepatitis B (HBV), Polio, Measles-Mumps-Rubella (MMR), Varicella, Pneumococcal conjugate (PCV), Influenza, or any other vaccine administered under the Minor Consent Act. D.C. Code § 38-602(a)(2). This violates Congress's mandate in 42 U.S.C. § 300aa-25.

119.    The Minor Consent Act subverts this mandate by commanding, in effect, the creation of two different immunization records for the same student: a false record accessible to the student or his parents, which does not contain any vaccines administered under the Minor Consent Act, and a separate record that does contain vaccines administered under the Act, but which cannot be transmitted to a parent.

120.    As part of this comprehensive regulatory scheme, Congress has mandated that upon request, a child's parents shall have access to the child's permanent medical record, which shall include for each vaccine the date it was administered; its manufacturer and lot number; the name, address, and title (if appropriate) of the health care provider who administered the vaccine;

and any other identifying information on the vaccine required by federal regulations. 42 U.S.C. §
300aa-25.

121.     The Minor Consent Act directly contradicts the recording requirements of 42
U.S.C. § 300aa-25(a), which mandates that the child's parent shall have access upon request to
the child's vaccine records.

122.     As part of this comprehensive regulatory scheme, Congress has mandated the
reporting of "the occurrence of any event set forth in the Vaccine Injury Table", which are
commonly referred to as "vaccine adverse events." 42 U.S.C. § 300aa-25(b)(1) requires that
"each health care provider and vaccine manufacturer *shall* report to the Secretary" of the U.S.
Department of Health and Human Services the following information: (A) "the occurrence of
any event set forth in the Vaccine Injury Table, including the events set forth in section 300aa-
14(b) of this title which occur within 7 days of the administration of any vaccine set forth in the
Table or within such longer period as is specified in the Table or section"; (B) "the occurrence of
any contraindicating reaction to a vaccine which is specified in the manufacturer's package
insert"; and (C) "such other matters as the Secretary may by regulation require."

123.     The reporting of vaccine adverse reactions required in 42 U.S.C. § 300aa-25(b) is
known as the Vaccine Adverse Events Reporting System (VAERS).

124.     The Minor Consent Act conflicts with the reporting of vaccine adverse reactions
required in 42 U.S.C. § 300aa-25(b) and the Vaccine Adverse Events Reporting System
(VAERS).

125.     One of the primary purposes of the National Vaccine Act is the establishment of
the Vaccine Injury Compensation Program, which has paid over $4 billion in compensation for
vaccine injuries since its creation. *See* **Exhibit B**.

126.    Congress's mandates in  42 U.S.C. § 300aa-25 are an essential component of the Vaccine Injury Compensation Program because eligibility for compensation under the Program is largely based upon the timely recognition of an injury listed on the Vaccine Injury Table.

127.    The Minor Consent Act subverts this requirement by creating a separate procedure whereby medical providers do not have to comply with the recording requirements of 42 U.S.C. § 300aa-25(a).

128.    The Minor Consent Act subverts this requirement by creating a separate procedure whereby medical providers cannot effectively comply with the reporting requirements of 42 U.S.C. § 300aa-25 (b) because critical vaccine records have been left "blank."

129.    The Minor Consent Act subverts this requirement by commanding that if the child's parent has a religious exemption, no information about any vaccines administered under the Minor Consent Act is to be recorded in the student's permanent medical record. The Minor Consent Act requires the medical provider to leave the vaccine record "blank."

130.    The Minor Consent Act subverts this requirement by depriving potential claimants of vital information necessary to establish their eligibility under the Program.

131.    As part of this comprehensive regulatory scheme, Congress has mandated that the U.S. Secretary of Health shall develop and disseminate Vaccine Information Materials for distribution by health care providers to the parents of any child or to any other individual receiving a vaccine set forth in the Vaccine Injury Table, for publication in the Federal Register. 42 U.S.C. § 300a-26.

132.    The "Vaccine Information Materials" referenced in 42 U.S.C. § 300aa-26 are commonly referred to as "Vaccine Information Statements" or "Vaccine Information Sheets" (VIS). The terms "Vaccine Information Materials," "Vaccine Information Statements," and

"Vaccine Information Sheets" are commonly used as interchangeable terms. The VISs for the vaccines at issue here are reproduced in **Exhibit A**.

133.    VISs are important in recognizing and preventing vaccine injuries, which may include severe allergic reactions, brain injury, paralysis, and death.

134.    Congress mandated in the National Vaccine Act that the Secretary of the U.S. Department of Health and Human Services "shall develop and disseminate vaccine information materials for distribution by health care providers to the legal representatives of any child or to any other individual receiving a vaccine set forth in the Vaccine Injury Table. Such materials shall be published in the Federal Register and may be revised." 42 U.S.C. § 300a-26(a).

135.    Congress further mandated that the Secretary shall develop and publish vaccine information materials in consultation with the Advisory Commission on Childhood Vaccines, appropriate health care providers and parent organizations, the CDC, and the FDA. 42 U.S.C. § 300aa-26(b).

136.    In contrast, the Minor Consent Act states that "The [District of Columbia] Department of Health shall produce one or more age-appropriate alternative vaccine information sheets." 22-B D.C.M.R. § 600.9. This directly conflicts with the National Vaccine Act, which mandates that the *Secretary* "shall develop and disseminate vaccine information materials for distribution by health care providers to the legal representatives of any child or to any other individual receiving a vaccine set forth in the Vaccine Injury Table. Such materials shall be published in the Federal Register and may be revised." 42 U.S.C. § 300a-26(a).

137.    VISs are designed to provide parents with the minimum information needed to understand the benefits and risks of administering vaccines, so that parents can form and give

informed consent. This includes information such as a list of persons who should not receive a particular vaccine, the risks of that vaccine, and adverse events to watch for.

138.    Additionally, VISs provide parents with information about the National Childhood Vaccine Injury Compensation Program.

139.    Moreover, a primary purpose of VISs is to educate parents about potential "adverse events" that may result from a vaccine, which may include severe life-threatening allergic reactions, seizures, brain damage, and ultimately death. Failing to recognize vaccine adverse events in a child can result in a child not receiving immediate necessary medical care.

140.    VISs also warn parents that allergic reactions and other adverse events may be precautions and contraindications to further vaccines. Failure to timely recognize vaccine allergic reactions, and other adverse events which are precautions or contraindications to further vaccines, place a child at risk of serious injury or death. The precautions and contraindications for the childhood vaccines at issue here are found in the CDC's *General Best Practice Guidelines for Immunization: Contraindications and Precautions*, which is reproduced in **Exhibit D**.

141.    By arrogating authority to the District's Department of Health to develop separate vaccine information materials, the Minor Consent Act also conflicts with 42 U.S.C. § 300a-26(b), in that the Department of Health's alternative VISs are not developed "in consultation with the Advisory Commission on Childhood Vaccines, appropriate health care providers and parent organizations, the Centers for Disease Control and Prevention, and the Food and Drug Administration."

142.    The information contained on the mandatory VISs is critical for the parents to be aware of to prevent serious harm (which can include neurological damage to the child), to

educate parents about potential "adverse events" (which can include encephalopathy (brain injury) and death), and to inform parents about the National Childhood Vaccine Injury Compensation Program (VICP) in the event their child is injured.

143.    By allowing vaccines to be administered to children, without providing parents the required VISs, the Minor Consent Act poses substantial medical risks to children that Congress deemed unacceptable. If a child receives an immunization without a parents' knowledge or consent, in all probability, the parent will have no way of recognizing that the child has suffered a vaccine injury. Not recognizing that the child has suffered from a vaccine adverse reaction can cause serious medical consequences. If the parent has not been provided the minimum information necessary to recognize a post vaccination adverse event, the parent will not know to seek immediate medical attention in the event of an adverse reaction. The parent will also not know that some post vaccine adverse events are listed as precautions and contraindications to further vaccinations. And if VISs are not provided to the parent, a parent may not discover the Vaccine Injury Compensation Program, or be able to timely document an injury under the Vaccine Injury Table.

144.    The Minor Consent Act also directly conflicts with the mandates of 42 U.S.C. §§ 300a-26(c) and (d), which mandates in the subsection titled "**Information requirements**" that "[t]he information in such materials shall be based on available data and information, shall be presented in understandable terms and shall include . . . such other relevant information as may be determined by the Secretary [of the U.S. Department of Health and Human Services]."

145.    As part of this comprehensive regulatory scheme, Congress has mandated that "each health care provider who administers a vaccine set forth in the Vaccine Injury Table shall provide to the legal representatives of any child or to any other individual to whom such provider

intends to administer such vaccine a copy of the information materials developed" by the Secretary. 42 U.S.C. § 300a-26(d).

146. As part of this comprehensive regulatory scheme, Congress has mandated that the Secretary's informational materials "shall be provided prior to the administration of such vaccine" to a child's parent. 42 U.S.C. § 300a-26(d).

147. The Minor Consent Act subverts this requirement by commanding that health providers seek consent from minor students, instead of providing these required materials to parents when seeking the parents' consent.

148. The Minor Consent Act subverts this requirement by commanding that health providers cannot provide any information about vaccines administered under the Minor Consent Act to parents, either before or after the vaccine is administered.

### The Religious Freedom Restoration Act of 1993

149. In 1993, Congress adopted the Religious Freedom Restoration Act (RFRA), codified in 42 U.S.C. § 2000bb, *et. seq*.

150. Congress adopted RFRA because the free exercise of religion is secured by the First Amendment, and laws "neutral" towards religion may burden religious exercise as surely as laws intended to interfere with religious exercise. 42 U.S.C. § 2000bb(a)(1)-(2).

151. Congress adopted RFRA to provide a claim or defense to persons whose religious exercise is substantially burdened by government and to create a cause of action for such persons to vindicate those rights. 42 U.S.C. § 2000bb(b)(2); 42 U.S.C. § 2000bb-1(c).

152. The District is a "covered entity" under RFRA. 42 U.S.C. § 2000bb-2(1) and (2).

153. Congress has mandated that government shall not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, unless it

demonstrates that application of the burden to the person is in furtherance of a compelling governmental interest, and is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 2000bb-1(a) and (b).

154.    Congress defines "free exercise" broadly, to include "any exercise of religion, whether or not compelled by, or central to, a system of religious beliefs." 42 U.S.C. § 2000bb-2(4); 42 U.S.C. § 2000cc-5(7)(A).

155.    The District has recognized a legal right of parents to claim a religious exemption from vaccinations, by filing an objection in good faith and in writing a statement with the chief official of the school that vaccinations would violate the parent's religious beliefs. A good faith statement that a parent has sincere religious beliefs against childhood immunizations is sufficient to claim the exemption. D.C. CODE § 38-506(1).

156.    For Victor, vaccinating his child would violate his sincerely held religious beliefs, and he has exercised those beliefs by claiming a religious exemption pursuant to D.C. CODE § 38-506(1).

157.    For Shameka, vaccinating her child would violate her sincerely held religious beliefs, and she has exercised those beliefs by claiming a religious exemption pursuant to D.C. CODE § 38-506(1).

158.    For Shanita, vaccinating her children would violate her sincerely held religious beliefs, and she has exercised those beliefs by claiming a religious exemption pursuant to D.C. CODE § 38-506(1).

159.    For Jane, vaccinating her child would violate her sincerely held religious beliefs, and she has exercised those beliefs by claiming a religious exemption pursuant to D.C. CODE § 38-506(1).

160.     The Minor Consent Act did not amend D.C. CODE § 38-506(1) to eliminate the religious exemption.

161.     Instead, the Minor Consent Act specifically states that vaccinations can be administered to the minor children of parents who have exercised their right to claim a *religious exemption*, without the parents' knowledge or consent. 22-B D.C.M.R. § 600.9(d)(1).

162.     Moreover, the Minor Consent Act states that if vaccinations are administered to the minor children of parents who have claimed a religious exemption, "the healthcare provider shall leave blank part 3 of the immunization record, and submit the immunization record directly to the minor student's school." D.C. Code § 38-602(a)(2).

163.     Moreover, the Minor Consent Act states that if vaccinations are administered to the minor children of parents who have exercised their right to claim a religious exemption, insurers shall not send an Explanation of Benefits (EOB) to the parents for services provided under the Minor Consent Act. 22-B D.C.M.R. § 600.9(d)(2).

164.     On October 6, 2020, the District's Chief Financial Officer, Jeffrey S. DeWitt, issued a Fiscal Impact Statement on the Minor Consent Act to the Honorable Phil Mendelson, Chairman of the Council of the District of Columbia. In this impact statement, Mr. DeWitt concluded that "[t]he bill requires providers to leave the immunization record blank on the Universal Health Certificate form when a parent is utilizing a religious exemption for vaccinations or is opting their child out of receiving the Human Papillomavirus vaccine. If the immunization record is left blank, providers must submit the Universal Health Certificate direction to the minor's school. Schools must keep this record confidential unless shared with D.C. Health or the school-based health center."

165.     In so doing, the Minor Consent Act subverts the decision of parents who have exercised their religious beliefs by claiming a lawful religious exemption from vaccinations.

166.     In so doing, the Minor Consent Act substantially burdens the free exercise rights of religious parents, by overriding their express religiously-motivated decisions.

167.     The Minor Consent Act is not predicated on the existence of a pandemic or other health emergency; it applies to all vaccines recommended by ACIP, in emergency or non-emergency circumstances. Indeed, at the time the Minor Consent Act was adopted in March 2021, neither the FDA nor ACIP allowed or recommended that children under the age of 16 receive the COVID-19 vaccine.

### *The Constitutional Rights of Parents*

168.     In *Troxel v. Granville*, the Supreme Court of the United States recognized that one of the oldest fundamental liberty interests protected by the Constitution is the interest of parents in the care, custody, and control of their children.

169.     In *Santosky v. Kramer*, the Court declared that "freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment."

170.     In *Wisconsin v. Yoder*, the Court declared that "the history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition."

171.     In *Cleveland Board of Education v. LaFleur*, the Court warned that "freedom of personal choice in matters of . . . family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment."

172.    In *Parham v. J.R.*, the Court stated that "our constitutional system long ago rejected any notion that a child is 'the mere creature of the State,' and, on the contrary, asserted that parents generally 'have the right, coupled with the high duty, to recognize and prepare [their children] for additional obligations.' Surely, this includes a 'high duty' to recognize symptoms of illness and to seek and follow medical advice. The law's concept of the family rests on the presumption that parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions."

173.    The fundamental rights of parents are implicated when the state intervenes and substitutes its decision making for that of the parents.

174.    A fit parent's decision with respect to the care, custody, and control of his or her child cannot be overridden by the government unless it has a compelling interest, and its actions are narrowly-tailored to accomplish that compelling interest.

175.    Victor is a fit parent, who has exercised his legal right under D.C. CODE § 38-506(1) to exempt his child from vaccinations because of his sincere religious beliefs.

176.    Shameka is a fit parent, who has exercised her legal right under D.C. CODE § 38-506(1) to exempt her child from vaccinations because of her sincere religious beliefs.

177.    Shanita is a fit parent, who has exercised her legal right under D.C. CODE § 38-506(1) to exempt her children from vaccinations because of her sincere religious beliefs.

178.    Jane is a fit parent, who has exercised her legal right under D.C. CODE § 38-506(1) to exempt her child from vaccinations because of her sincere religious beliefs.

179.    By authorizing the vaccination of children whose parents have claimed a religious exemption, the Minor Consent Act substitutes the District's own medical preferences over those of the children's parents.

## **FIRST CAUSE OF ACTION**

### **28 U.S.C. § 2201 and 42 U.S.C. § 1983**

### **Adoption and Enforcement of an Unconstitutional Statute that Deprives Parents of Federal Statutory Rights Guaranteed by the National Childhood Vaccine Injury Act of 1986, in violation of Article VI and the Fifth Amendment of the Constitution**

180.    The allegations contained in paragraphs 1 through 181 are hereby realleged and incorporated by reference herein.

181.    Article VI, clause 2 of the U.S. Constitution states that the Constitution and laws of the United States shall be the supreme law of the land.

182.    By adopting the National Vaccine Act, Congress expressed a clear intent to occupy the field of law as to the administration of childhood vaccinations.

183.    Congress has mandated that before vaccines could be administered to children, parents must be provided with a detailed Vaccine Injury Statement (VIS) before a vaccine is administered, and that detailed information about each vaccine—including date of administration, the manufacturer and lot number, and the name and address of the health care provider administering the vaccine—must be recorded in the child's permanent health record.

184.    Contrary to the National Vaccine Act, the Minor Consent Act allows a child to be injected with vaccines without the parent's knowledge or consent, and is designed to conceal from the child's parent the fact that the child has been injected with vaccines without the parent's knowledge or consent. By intentionally and surreptitiously stripping parents of their decision-making and rights regarding the medical care of their child, and placing that decision-making squarely in the hands of the government, the Minor Consent Act subverts the protections of the National Vaccine Act, in violation of Article VI and the Fifth Amendment of the Constitution of the United States.

185.     Contrary to the National Vaccine Act, the Minor Consent Act commands that the immunization record shall be confidential in order to hide from the parent that the child has been vaccinated and mandates that any information about vaccinations administered under the Minor Consent Act shall not be added to the child's permanent health record, but shall instead be recorded only in a record maintained by the child's school, inaccessible to the parent. By intentionally depriving parents of any knowledge that their children have received immunizations, the Minor Consent Act subverts the protections of the National Vaccine Act, in violation of Article VI and the Fifth Amendment of the Constitution of the United States.

186.     Contrary to the National Vaccine Act, the Minor Consent Act prevents the parent from receiving federally mandated Vaccine Injury Statements at the time the child is vaccinated and subverts Congress's intent to protect children by depriving parents of any knowledge that their child may be at increased risk of serious harm or death. In so doing, the Minor Consent Act usurps the responsibility and authority of the private entities and federal government agencies, to which Congress entrusted and assigned the responsibility to develop and publish Vaccine Injury Statements in violation of the Supremacy Clause of Article VI and the Due Process Clause of Fifth Amendment of the Constitution of the United States.

187.     Because the Minor Consent Act prevents providers from disclosing the administration of vaccinations to parents, Victor will receive no formal notice if his rights under the National Vaccine Act are subverted, much less prior notice and an opportunity to assert those rights before he is deprived of them. By mandating these surreptitious acts, the Minor Consent Act erects barriers that make it far more difficult for parents like Victor to vindicate their legal and constitutional rights.

188.     Additionally, by allowing the District to develop its own alternative VISs for distribution to children, the Minor Consent Act deprives children of an opportunity to have a VIS developed by the Secretary of the U.S. Department of Health and Human Services, developed in consultation with the CDC and FDA, in accordance with standards specified by Congress.

189.     The plain language of the Minor Consent Act, combined with the public statements of the D.C. Council in adopting it and the subsequent actions and public statements of the defendants, has caused Victor to fear that L.B. will be pressured to receive one or more vaccinations—including vaccinations for HPV, meningitis, and COVID-19—when DCPS returns to mandatory, full-time, in-person learning on August 30, 2021, and that this will occur without Victor's knowledge or consent. Because Victor will not send L.B. back to Kipp Will Academy while this risk remains, his only alternative is to enroll L.B. in a DCPS program that offers remote instruction—if such a program continues in the fall of 2021, and is available to him—or to enroll L.B. in some other educational alternative to public school, at his own personal expense. As such, Victor asks this Court to declare the Act illegal, and to issue an injunction preventing the Mayor, D.C. Health, and DCPS from enforcing the Act.

190.     Because the Minor Consent Act prevents providers from disclosing the administration of vaccinations to parents, Shameka will receive no formal notice if her rights under the National Vaccine Act are subverted, much less prior notice and an opportunity to assert those rights before she is deprived of them. By mandating these surreptitious acts, the Minor Consent Act erects barriers that make it far more difficult for parents like Shameka to vindicate their legal and constitutional rights.

191.     The plain language of the Minor Consent Act, combined with the public statements of the D.C. Council in adopting it and the subsequent actions and public statements of

the defendants, has caused Shameka to fear that K.G. will be pressured to receive one or more vaccinations—including vaccinations for HPV, meningitis, and COVID-19—when DCPS returns to mandatory, full-time, in-person learning on August 30, 2021, and that this will occur without Shameka's knowledge or consent. Because Shameka will not send K.G. back to Hardy Middle School while this risk remains, her only alternative is to enroll K.G. in a DCPS program that offers remote instruction—if such a program continues in the fall of 2021, and is available to her—or to enroll K.G. in some other educational alternative to public school, at her own personal expense. As such, Shameka asks this Court to declare the Act illegal, and to issue an injunction preventing the Mayor, D.C. Health, and DCPS from enforcing the Act.

192.    Because the Minor Consent Act prevents providers from disclosing the administration of vaccinations to parents, Shanita will receive no formal notice if her rights under the National Vaccine Act are subverted, much less prior notice and an opportunity to assert those rights before she is deprived of them. By mandating these surreptitious acts, the Minor Consent Act erects barriers that make it far more difficult for parents like Shanita to vindicate their legal and constitutional rights.

193.    The plain language of the Minor Consent Act, combined with the public statements of the D.C. Council in adopting it and the subsequent actions and public statements of the defendants, has caused Shanita to fear that N.W. and M.R. will be pressured to receive one or more vaccinations—including vaccinations for HPV, meningitis, and COVID-19—when DCPS returns to mandatory, full-time, in-person learning on August 30, 2021, and that this will occur without Shanita's knowledge or consent. Because Shanita will not send N.W. or M.R. back to school while this risk remains, her only alternative is to enroll N.W. and M.R. in a DCPS program that offers remote instruction—if such a program continues in the fall of 2021, and is

available to her—or to enroll them in some other educational alternative to public school, at her own personal expense. As such, Shanita asks this Court to declare the Act illegal, and to issue an injunction preventing the Mayor, D.C. Health, and DCPS from enforcing the Act.

194.    Because the Minor Consent Act prevents providers from disclosing the administration of vaccinations to parents, Jane will receive no formal notice if her rights under the National Vaccine Act are subverted, much less prior notice and an opportunity to assert those rights before she is deprived of them. By mandating these surreptitious acts, the Minor Consent Act erects barriers that make it far more difficult for parents like Jane to vindicate their legal and constitutional rights.

195.    The plain language of the Minor Consent Act, combined with the public statements of the D.C. Council in adopting it and the subsequent actions and public statements of the defendants, has caused Jane to fear that H.B. will be pressured to receive one or more vaccinations—including vaccinations for HPV, meningitis, and COVID-19—when DCPS returns to mandatory, full-time, in-person learning on August 30, 2021, and that this will occur without Jane's knowledge or consent. Because Jane will not send H.B. back to School Without Walls while this risk remains, her only alternative is to enroll H.B. in a DCPS program that offers remote instruction—if such a program continues in the fall of 2021, and is available to her—or to enroll H.B. in some other educational alternative to public school, at her own personal expense. As such, Jane asks this Court to declare the Act illegal, and to issue an injunction preventing the Mayor, D.C. Health, and DCPS from enforcing the Act.

## SECOND CAUSE OF ACTION

### 28 U.S.C. § 2201, 42 U.S.C. § 1983, and 42 U.S.C. § 2000bb

### Adoption and Enforcement of an Unconstitutional Statute
### In violation of the Religious Freedom Restoration Act of 1993

196.    The allegations contained in paragraphs 1 through 197 are hereby realleged and incorporated by reference herein.

197.    The District has recognized a legal right of parents to claim a religious exemption from vaccinations, by filing an objection in good faith and writing a statement with the chief official of the school that vaccinations would violate the parents' religious beliefs. The Minor Consent Act does not amend the D.C. Code to eliminate that religious exemption.

198.    The Minor Consent Act substantially burdens free exercise rights by authorizing the actual *administration* of vaccines to the minor children of parents who have exercised their right to claim a religious exemption, without the parent's knowledge or consent.

199.    The Minor Consent Act does not identify any compelling interest that would justify overriding the decision of parents to decline childhood vaccines on account of their sincere religious beliefs.

200.    The Minor Consent Act does not further any compelling interest that would justify overriding the decision of parents to decline childhood vaccines on account of their sincere religious beliefs. The District has no compelling interest in offering parents a religious exemption with one hand and surreptitiously taking away the exemption protections with the other.

201.    The Minor Consent Act is not narrowly tailored to further any compelling interest that might justify overriding the religious decisions of parents.

202.    Because the Minor Consent Act prevents providers from disclosing the administration of vaccinations to parents, Victor will receive no formal notice if his free exercise rights are subverted, much less prior notice and an opportunity to assert those rights before he is deprived of them.

203.    The plain language of the Minor Consent Act, combined with the public statements of the D.C. Council in adopting it and the subsequent actions and public statements of the defendants, has caused Victor to fear that L.B. will be pressured to receive one or more vaccinations—including vaccinations for HPV, meningitis, and COVID-19—when DCPS returns to mandatory, full-time, in-person learning on August 30, 2021, and that this will occur without Victor's knowledge or consent. Because Victor will not send L.B. back to Kipp Will Academy while this risk remains, his only alternative is to enroll L.B. in a DCPS program that offers remote instruction—if such a program continues in the fall of 2021, and is available to him—or to enroll L.B. in some other educational alternative to public school, at his own personal expense. As such, Victor asks this Court to declare the Act illegal, and to issue an injunction preventing the Mayor, D.C. Health, and DCPS from enforcing the Act.

204.    Because the Minor Consent Act prevents providers from disclosing the administration of vaccinations to parents, Shameka will receive no formal notice if her free exercise rights are subverted, much less prior notice and an opportunity to assert those rights before she is deprived of them.

205.    The plain language of the Minor Consent Act, combined with the public statements of the D.C. Council in adopting it and the subsequent actions and public statements of the defendants, has caused Shameka to fear that K.G. will be pressured to receive one or more vaccinations—including vaccinations for HPV, meningitis, and COVID-19—when DCPS

returns to mandatory, full-time, in-person learning on August 30, 2021, and that this will occur without Shameka's knowledge or consent. Because Shameka will not send K.G. back to Hardy Middle School while this risk remains, her only alternative is to enroll K.G. in a DCPS program that offers remote instruction—if such a program continues in the fall of 2021, and is available to her—or to enroll K.G. in some other educational alternative to public school, at her own personal expense. As such, Shameka asks this Court to declare the Act illegal, and to issue an injunction preventing the Mayor, D.C. Health, and DCPS from enforcing the Act.

206.    Because the Minor Consent Act prevents providers from disclosing the administration of vaccinations to parents, Shanita will receive no formal notice if her free exercise rights are subverted, much less prior notice and an opportunity to assert those rights before she is deprived of them.

207.    The plain language of the Minor Consent Act, combined with the public statements of the D.C. Council in adopting it and the subsequent actions and public statements of the defendants, has caused Shanita to fear that N.W. and M.R. will be pressured to receive one or more vaccinations—including vaccinations for HPV, meningitis, and COVID-19—when DCPS returns to mandatory, full-time, in-person learning on August 30, 2021, and that this will occur without Shanita's knowledge or consent. Because Shanita will not send N.W. and M.R. back to school while this risk remains, her only alternative is to enroll N.W. and M.R. in a DCPS program that offers remote instruction—if such a program continues in the fall of 2021, and is available to her—or to enroll them in some other educational alternative to public school, at her own personal expense. As such, Shanita asks this Court to declare the Act illegal, and to issue an injunction preventing the Mayor, D.C. Health, and DCPS from enforcing the Act.

208.     Because the Minor Consent Act prevents providers from disclosing the administration of vaccinations to parents, Jane will receive no formal notice if her free exercise rights are subverted, much less prior notice and an opportunity to assert those rights before she is deprived of them.

209.     The plain language of the Minor Consent Act, combined with the public statements of the D.C. Council in adopting it and the subsequent actions and public statements of the defendants, has caused Jane to fear that H.B. will be pressured to receive one or more vaccinations—including vaccinations for HPV, meningitis, and COVID-19—when DCPS returns to mandatory, full-time, in-person learning on August 30, 2021, and that this will occur without Jane's knowledge or consent. Because Jane will not send H.B. back to School Without Walls while this risk remains, her only alternative is to enroll H.B. in a DCPS program that offers remote instruction—if such a program continues in the fall of 2021, and is available to her—or to enroll H.B. in some other educational alternative to public school, at her own personal expense. As such, Jane asks this Court to declare the Act illegal, and to issue an injunction preventing the Mayor, D.C. Health, and DCPS from enforcing the Act.

### THIRD CAUSE OF ACTION

**28 U.S.C. § 2201 and 42 U.S.C. § 1983**

**Adoption and Enforcement of an Unconstitutional Statute that Deprives Parents of their Fundamental Right to Direct the Upbringing of their Children In Violation of the Fifth Amendment of the U.S. Constitution**

210.     The allegations contained in paragraphs 1 through 211 are hereby realleged and incorporated by reference herein.

211.     It is clearly established both in this Circuit and the District of Columbia that fit parents have a fundamental right to direct the upbringing of their children.

212.    The Minor Consent Act surreptitiously subverts that legal right. With one hand, the District has extended to parents a statutory right to exempt their children from vaccinations; with the other, the District takes away from those same parents the protection of that lawful exemption, without their knowledge or consent.

213.    The Minor Consent Act does not hinge on any finding of parental unfitness. On the contrary, the Minor Consent Act permits healthcare providers to administer vaccines to minor children without any consideration of the parents' fitness—and, indeed, to the children of fit parents—based on the provider's sole assessment of whether the minor child can provide informed consent.

214.    Moreover, the Minor Consent Act states that if vaccinations are administered to the minor children of parents who have exercised their right to claim a religious exemption, this administration shall be kept secret from the parents. Specifically, healthcare providers are prohibited from recording the vaccinations in part 3 of the child's unization records and are barred from sending an Explanation of Benefits (EOB) to the parents for any vaccinations they administer under the Minor Consent Act.

215.    The Minor Consent Act does not account for, much less rebut, the presumption that fit parents act in the best interests of their children.

216.    The Minor Consent Act does not accord special weight to the decisions of fit parents; on the contrary, it discards the decisions of fit parents.

217.    The Minor Consent Act does not identify any compelling interest that would justify overriding the decision of fit parents to decline childhood vaccines.

218.    The Minor Consent Act does not further any compelling interest that would justify overriding the decision of fit parents to decline childhood vaccines.

219.    The Minor Consent Act is not narrowly tailored to further any compelling interest that might justify overriding the decision of fit parents to decline childhood vaccines.

220.    Pursuant to this unconstitutional Minor Consent Act, a medical provider at a hospital, clinic, or school office could administer vaccinations to L.B. without Victor's prior knowledge or consent, subverting his fundamental right under the Fifth Amendment to claim a lawful exemption from vaccinations for her minor children. Because the Minor Consent Act prevents providers from disclosing the administration of vaccines to parents, Victor will receive no formal notice if his parental rights are subverted, much less prior notice and an opportunity to assert those rights before she is deprived of them.

221.    The plain language of the Minor Consent Act, combined with the public statements of the D.C. Council in adopting it and the subsequent actions and public statements of the defendants, has caused Victor to fear that L.B. will be pressured to receive one or more vaccinations—including vaccinations for HPV, meningitis, and COVID-19—when DCPS returns to mandatory, full-time, in-person learning on August 30, 2021, and that this will occur without Victor's knowledge or consent. Because Victor will not send L.B. back to Kipp Will Academy while this risk remains, his only alternative is to enroll L.B. in a DCPS program that offers remote instruction—if such a program continues in the fall of 2021, and is available to him—or to enroll L.B. in some other educational alternative to public school, at his own personal expense. As such, Victor asks this Court to declare the Act illegal, and to issue an injunction preventing the Mayor, D.C. Health, and DCPS from enforcing the Act.

222.    Pursuant to this unconstitutional Minor Consent Act, a medical provider at a hospital, clinic, or school office could administer vaccinations to K.G. without Shameka's prior knowledge or consent, subverting her fundamental right under the Fifth Amendment to claim a

lawful exemption from vaccinations for her minor children. Because the Minor Consent Act prevents providers from disclosing the administration of vaccines to parents, Shameka will receive no formal notice if her parental rights are subverted, much less prior notice and an opportunity to assert those rights before she is deprived of them.

223.    The plain language of the Minor Consent Act, combined with the public statements of the D.C. Council in adopting it and the subsequent actions and public statements of the defendants, has caused Shameka to fear that K.G. will be pressured to receive one or more vaccinations—including vaccinations for HPV, meningitis, and COVID-19—when DCPS returns to mandatory, full-time, in-person learning on August 30, 2021, and that this will occur without Shameka's knowledge or consent. Because Shameka will not send K.G. back to Hardy Middle School while this risk remains, her only alternative is to enroll K.G. in a DCPS program that offers remote instruction—if such a program continues in the fall of 2021, and is available to her—or to enroll K.G. in some other educational alternative to public school, at her own personal expense. As such, Shameka asks this Court to declare the Act illegal, and to issue an injunction preventing the Mayor, D.C. Health, and DCPS from enforcing the Act.

224.    Pursuant to this unconstitutional Minor Consent Act, a medical provider at a hospital, clinic, or school office could administer vaccinations to N.W. or M.R. without Shanita's prior knowledge or consent, subverting her fundamental right under the Fifth Amendment to claim a lawful exemption from vaccinations for her minor children. Because the Minor Consent Act prevents providers from disclosing the administration of vaccines to parents, Shanita will receive no formal notice if her parental rights are subverted, much less prior notice and an opportunity to assert those rights before she is deprived of them.

225.    The plain language of the Minor Consent Act, combined with the public statements of the D.C. Council in adopting it and the subsequent actions and public statements of the defendants, has caused Shanita to fear that N.W. and M.R. will be pressured to receive one or more vaccinations—including vaccinations for HPV, meningitis, and COVID-19—when DCPS returns to mandatory, full-time, in-person learning on August 30, 2021, and that this will occur without Shanita's knowledge or consent. Because Shanita will not send N.W. or M.R. back to school while this risk remains, her only alternative is to enroll them in a DCPS program that offers remote instruction—if such a program continues in the fall of 2021, and is available to her—or to enroll them in some other educational alternative to public school, at her own personal expense. As such, Shanita asks this Court to declare the Act illegal, and to issue an injunction preventing the Mayor, D.C. Health, and DCPS from enforcing the Act.

226.    Pursuant to this unconstitutional Minor Consent Act, a medical provider at a hospital, clinic, or school office could administer vaccinations to H.B. without Jane's prior knowledge or consent, subverting her fundamental right under the Fifth Amendment to claim a lawful exemption from vaccinations for her minor children. Because the Minor Consent Act prevents providers from disclosing the administration of vaccines to parents, Jane will receive no formal notice if her parental rights are subverted, much less prior notice and an opportunity to assert those rights before she is deprived of them.

227.    The plain language of the Minor Consent Act, combined with the public statements of the D.C. Council in adopting it and the subsequent actions and public statements of the defendants, has caused Jane to fear that H.B. will be pressured to receive one or more vaccinations—including vaccinations for HPV, meningitis, and COVID-19—when DCPS returns to mandatory, full-time, in-person learning on August 30, 2021, and that this will occur

without Jane's knowledge or consent. Because Jane will not send H.B. back to School Without

Walls while this risk remains, her only alternative is to enroll H.B. in a DCPS program that

offers remote instruction—if such a program continues in the fall of 2021, and is available to

her—or to enroll him in some other educational alternative to public school, at her own personal

expense. As such, Jane asks this Court to declare the Act illegal, and to issue an injunction

preventing the Mayor, D.C. Health, and DCPS from enforcing the Act.

## **PRAYER FOR RELIEF**

WHEREFORE, the plaintiffs respectfully request that this Court:

A.      Issue a declaratory judgment that the District of Columbia Minor Consent for

Vaccinations Amendment Act of 2020 conflicts with Congress's mandates in the National

Childhood Vaccine Injury Act of 1986, thereby depriving parents and children of their statutory

right to have prior knowledge and consent before vaccines are administered to minor children;

B.      Issue a declaratory judgment that because the District of Columbia Minor Consent

for Vaccinations Amendment Act of 2020 conflicts with clear commands in the National

Childhood Vaccine Injury Act of 1986, it is an unconstitutional violation of the Supremacy

Clause;

C.      Issue a declaratory judgment that the District of Columbia Minor Consent for

Vaccinations Amendment Act of 2020 substantially and unlawfully burdens the rights of parents

who have lawfully objected to vaccinations on the basis of sincerely held religious beliefs, in

violation of the Religious Freedom Restoration Act of 1993;

D.      Issue a declaratory judgment that the District of Columbia Minor Consent for

Vaccinations Amendment Act of 2020 deprives parents of their fundamental right to direct the

care and upbringing of their children, in violation of the Due Process Clause of the Fifth

Amendment;

     E.     Issue a permanent injunction, enjoining the Mayor, D.C. Health, and DCPS from

enforcing the provisions of the District of Columbia Minor Consent for Vaccinations

Amendment Act of 2020;

     F.     Award plaintiffs' costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

     G.     Grant such other and further relief as the Court deems proper.

Respectfully submitted this 12th day of July, 2021:

<div style="margin-left:40%">

/s James R. Mason III
James R. Mason III
D.C. Bar No. 978781
Parental Rights Foundation
One Patrick Henry Circle
Purcellville, VA 20132
Phone: (540) 338-5600
Fax: (540) 338-1952
E-mail: jim@hslda.org
*Counsel for Plaintiffs*

Robert F. Kennedy, Jr.*
Rolf G. S. Hazlehurst*
Children's Health Defense
202 Tuckahoe Cove
Jackson, TN 38305
731-267-1663
rolf.hazlehurst@childrenshealthdefense.org
*\*Pro Hac Vice Motion Pending*
*Counsel for Plaintiffs*

</div>

## VERIFICATION OF VICTOR BOOTH

I, Victor Booth, declare as follows:

1.      I am a Plaintiff in the above captioned matter and a citizen of the United States of America, who resides in the District of Columbia.

2.      I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing *Verified Complaint for Declaratory and Injunctive Relief*, and if called on to testify I would competently testify as to the matters stated herein.

3.      I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint* concerning myself, my activities, and my intentions are true and correct.


Executed on the 18th day of June, 2021.


/s Victor Booth
Victor Booth*


\* In accordance with LCvR 5.4(b)(5), the original signed document is in the possession of Counsel of Record, and is available for review upon request by a party or by the Court.

## VERIFICATION OF SHAMEKA WILLIAMS

I, Shameka Williams, declare as follows:

1.      I am a Plaintiff in the above captioned matter and a citizen of the United States of America, who resides in the District of Columbia.

2.      I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing *Verified Complaint for Declaratory and Injunctive Relief*, and if called on to testify I would competently testify as to the matters stated herein.

3.      I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint* concerning myself, my activities, and my intentions are true and correct.


Executed on the 7th day of July, 2021.


/s Shameka Williams
Shameka Williams*


* In accordance with LCvR 5.4(b)(5), the original signed document is in the possession of the attorney and is available for review upon request by a party or by the Court.

## VERIFICATION OF SHANITA WILLIAMS

I, Shanita Williams, declare as follows:

1.      I am a Plaintiff in the above captioned matter and a citizen of the United States of America, who resides in the District of Columbia.

2.      I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing *Verified Complaint for Declaratory and Injunctive Relief*, and if called on to testify I would competently testify as to the matters stated herein.

3.      I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint* concerning myself, my activities, and my intentions are true and correct.


Executed on the 25th day of June, 2021.



/s Shanita Williams
Shanita Williams


* In accordance with LCvR 5.4(b)(5), the original signed document is in the possession of the attorney and is available for review upon request by a party or by the Court.

## VERIFICATION OF JANE HELLEWELL

I, Jane Hellewell, declare as follows:

1.      I am a Plaintiff in the above captioned matter and a citizen of the United States of America, who resides in the District of Columbia.

2.      I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing *Verified Complaint for Declaratory and Injunctive Relief*, and if called on to testify I would competently testify as to the matters stated herein.

3.      I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint* concerning myself, my activities, and my intentions are true and correct.

Executed on the 26th day of June, 2021.

/s Jane Hellewell
Jane Hellewell*

* In accordance with LCvR 5.4(b)(5), the original signed document is in the possession of the attorney and is available for review upon request by a party or by the Court.